# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARK SADOVSKY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-18-CV-271-XR |
| | § | |
| NATIONWIDE PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Defendant's Motion for Judgment on the Pleadings and Motion for Summary Judgment (docket no. 38), Defendant's motions to exclude the testimony of Phil Mayfield (docket no. 26) and William "Mike" Norris (docket no. 28), and the corresponding responses and replies. After careful consideration, the Court GRANTS Defendant's motion for summary judgment as to all claims and DISMISSES AS MOOT the remaining motions.

## BACKGROUND

This is an insurance dispute concerning a roof allegedly damaged in an April 12, 2016 hail and wind storm. Plaintiff Mark Sadovsky's home at 9234 Bent Elm Creek Lane is covered by a residential property insurance policy issued by Defendant Nationwide. On April 20, 2016, Plaintiff submitted a claim, to which Defendant assigned adjuster Robert Christophersen. Docket no. 38-4 at 2. Christophersen called Plaintiff, who stated that he had prior success with the Roof Doctor, a roofing contractor. *Id.* Of the Roof Doctor's previous work, Plaintiff stated

at deposition that he had "nothing but the highest regard for them and their work." Docket no. 38-2.

Christophersen inspected the property on May 2, 2016, and "did not observe physical damage to any roof tile, but instead found spatter on the tiles, and observed two skylights had been cracked due to hail." On May 11, 2016, Plaintiff sent Christophersen a Roof Doctor-generated estimate of $2,869 for repair of "[h]ail damaged roof issues," namely "two cracked skylights, broken/damaged tiles, and hole in lead flashing of roof jack." Docket no. 38-17. After reviewing this estimate, on May 19, 2016, Christophersen sent Plaintiff a repair estimate of $7,994.49, which included the Roof Doctor estimate and cost of interior water damage repairs. Docket no. 38-4. The claim was paid and closed on December 17, 2016. *Id.*

Plaintiff's claims in this suit allege that Christophersen's handling of this first claim was unreasonable and took advantage of Plaintiff. Plaintiff notes that Christophersen did not get on the roof during his May 2 investigation, docket no. 41-2, and states that he relied on Christophersen because he thought Defendant and Christophersen were "on their side," docket no. 41 at 12.

In spring 2017, Plaintiff's wife, Ellen Sadovsky, noticed "everyone around us was getting new roofs." Docket no. 38-3. Plaintiff asked a neighbor's roofing contractor, Brandon Walker of Peachtree Construction, to inspect his roof. Docket no. 38-2. Plaintiff states that Walker informed him of unrepaired hail damage. *Id.*

Plaintiff did not file a new claim with Defendant but instead hired counsel, sent Defendant a letter of representation on September 15, 2017, and sent Defendant a demand letter for $68,372.89 (covering the cost of a full roof replacement) on October 4, 2017.

Defendant retained engineer Pablo Garza to inspect the roof, and Garza attributed the wind-damaged tiles he found to a February 2017 wind storm. Docket no. 38-12. Thus, Defendant sent a partial denial letter that stated Defendant found no additional covered damage. Docket no. 38-13.

Plaintiff states he needs a full roof replacement because William "Mike" Norris, who prepared the second repair estimate, testified that it would not be cost-effective to repair only the damaged tiles. Docket no. 41-6. Further, Plaintiff's expert Phil Mayfield testified that the manufacturer of these roofing tiles no longer makes the particular tile on Plaintiff's roof. Docket no. 38-19. In his report, Mayfield states that "[b]ecause the correct tile is no longer available, the only viable solution is to remove all existing tile and install new tile roofing of similar quality as the existing . . . ." Docket no. 41-7 at 10.

On January 23, 2018, Plaintiff filed this lawsuit in the 408th Judicial District Court of Bexar County, Texas, bringing claims for breach of contract, violations of the Texas Deceptive Trade Practices Act and tie-in statutes, violations of the Texas Insurance Code, and breach of the common law duty of good faith. Defendant Nationwide removed to this Court on March 22, 2018.

## DISCUSSION

### I.      Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-

moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.     Application

Defendant moves for judgment on the pleadings under Rule 12(c) and, alternatively, for summary judgment. Having reviewed the summary judgment evidence, however, the Court

opts to consider the summary judgment motion first, as this motion decides all claims in this case.

### a. Breach of Contract

First, the Court considers Plaintiff's breach of contract claim. The elements of a breach of contract action under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Grp*., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l*, *L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The insured bears the burden of establishing that his claim is covered by the policy. *Wells v. Minn. Life Ins. Co*., 885 F.3d 885, 890 (5th Cir. 2018).

Defendant argues it is entitled to summary judgment on this claim because "(1) Plaintiff failed to perform under the contract by failing to timely notify Nationwide of its additional claimed damages; (2) Nationwide performed its contractual obligations; (3) Plaintiff fails to segregate covered and non-covered damages; and (4) the Policy excludes coverage for damage resulting from mismatched materials." Docket no. 38 at 43.

### i. Notice

Insurance policy notice requirements are interpreted, in Texas, as conditions precedent to coverage. *Flores v. Allstate Texas Lloyd's Co*., 278 F. Supp. 2d 810, 815 (S.D. Tex. 2003). Failure to comply with the notice requirement "constitutes a breach of contract and relieves the insurer of the obligation to defend or indemnify." *Id.* (quoting *Nan Travis Memorial Hospital v. St. Paul Fire & Marine Ins. Co*., 394 F.2d 112 (5th Cir. 1968)).

Plaintiff's policy requires Plaintiff to give "prompt notice" to Defendant in the event of a loss but "prompt" is not defined. Docket no 38-1 at p. 00023. "Where, as here, the policy does not define 'prompt' notice, Texas courts construe the phrase to mean 'that notice must be given within a reasonable time after the occurrence' of the damage.'" *Hamilton Props. v. Am. Ins. Co.*, 643 Fed. Appx. 437, 442 (5th Cir. 2016) (citing *Ridglea Estate Condominium Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005)).

Whether notice is "prompt" is generally a question of fact, *Continental Savings Assoc. v. U.S. Fidelity & Guaranty Co.*, 762 F.2d 1239, 1243 (5th Cir.1985), but if the facts are undisputed Texas courts may deem late notice unreasonable, *Flores*, 278 F. Supp. 2d at 815 (citing *McPherson v. St. Paul Fire & Marine Ins. Co.*, 350 F.2d 563, 565 (5th Cir. 1965). "This is especially true 'where the delay is totally unexplained and without excuse.'" *Id.* (quoting *National Union Fire Ins. v. Bourn*, 441 S.W.2d 592, 595 (Tex. Civ. App.—Ft. Worth 1969, writ ref'd, n.r.e.)); *see also Alaniz v. Sirius Int'l Ins. Corp.*, 626 Fed. Appx. 73, 77 (5th Cir. 2015) (stating that "if the delay occurs without explanation, it is appropriate to conclude that prompt notice was not given as a matter of law" and citing Texas cases where delays of 46 days, three months, and six months, were unreasonable as a matter of Texas law).

Here, Plaintiff clearly provided prompt notice originally, filing a claim eight days after the April 12, 2016 storm, which is when the damage allegedly occurred. Defendant paid this claim based on the estimate provided by the Roof Doctor. The claim was paid and closed on December 17, 2016. In spring 2017, because neighbors were installing new roofs, Plaintiff asked a neighbor's roofing contractor, Brandon Walker, to inspect his roof. Walker allegedly found unrepaired hail damage.

Rather than making "prompt" notice, the summary judgment evidence shows that Plaintiff's next communication with Defendant was on September 15, 2017, when Plaintiff's counsel sent a letter of representation. On October 4, 2017, Plaintiff sent a demand letter with the new estimate. Although the exact date of Walker's inspection is disputed—Plaintiff stated at deposition that "it was probably early '17 . . . and probably spring of '17" (docket no. 41-4 at 16)—there was nevertheless a gap of several months between when Plaintiff discovered the claimed damage and when Plaintiff notified Defendant. Plaintiff testified that he asked Walker to contact Defendant: "And I said will you talk to my insurance company. He said I'm not an intermediary. I gave him the contact information, and he did. And he told me later that he tried several times and could not get a response from Nationwide." Docket no. 41-4 at 16. This is insufficient to raise a fact issue as to prompt notice, particularly because Ellen Sadovsky testified that she did not "have a good answer" for why neither she nor Plaintiff contacted Defendant between the claim's closing in December 2016 and Plaintiff's hiring a lawyer. Docket no. 38-3 at 10.

Defendant, however, must show that it was "prejudiced" by the unreasonably late notice. *Hamilton*, 643 Fed. App'x at 440. "Prejudice can arise when the failure to timely notify results in the insurer's 'inability to investigate the circumstances of an occurrence to prepare adequately to adjust or defend any claims.'" *Id.* (quoting *Blanton*, 185 S.W.3d at 615). Defendant neglects to argue prejudice explicitly, but after Plaintiff retained counsel Defendant hired engineer Pablo Garza to inspect the property. Garza's report attributes the wind-damaged roof tiles he observed to a February 2017 wind event:

> The concrete tile roofing had been damaged by the effects of wind at some point in the past. The roofing was not damaged on or near April 12, 2016; however, it was likely damaged by wind associated with storm activity in

February 2017. There were 26 shifted tiles and 11 missing tiles throughout the roofing. The missing and shifted tiles on the roof indicated that wind with enough energy to move and displace the tiles affected the site. Since, the only recorded wind event in the area with sufficient wind speeds to cause this effect occurred in February of 2017, it is likely that this was when the tiles were shifted by wind.

Docket no. 38-4 at 9-10.

Taken together, Plaintiff claims he learned of the additional damages (allegedly caused in April 2016) in "early" 2017, the estimate of this damage was only provided to Defendant in October 2017, Plaintiff offers no excuse for this delay, and Defendant's expert attributes the damage to a February 2017 storm, which is a central piece of Defendant's defense. Had Plaintiff notified Defendant promptly, Defendant could have investigated before the February 2017 storm or shortly thereafter, depending on what "early" 2017 means.[1] Thus, the Court considers this delay prejudicial to Defendant's investigation and defense.

### ii. Segregation of Losses

Assuming for argument that the delayed notice was either reasonable or did not prejudice Defendant, the Court also finds Plaintiff has not stated a claim for breach of contract. "An insurer is liable only for losses covered by the policy." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). Accordingly, "[w]hen covered and excluded perils combine to cause an injury, the insured must present

---

[1] The Court notes that the policy's coverage period extended to March 2017. Docket no. 38-1. Thus, the February 2017 storm about which Defendant's expert opines would have fallen within the coverage period. Still, Plaintiff does not base this case on unreasonable denial of a claim for February 2017 damages, as it appears Plaintiff presented no such claim. Instead, Plaintiff bases this case only on allegedly unreasonable investigation of the April 2016 storm. Plaintiff's demand letter led to Defendant's reinspection of the roof. Defendant stated that "[t]he reinspection . . . confirmed minor interior water damage . . . and hail damage to a few of the concrete tiles on the dwelling roof. These damages are consistent with the Nationwide estimate previously provided . . . ." Docket no. 38-13.

some evidence affording the jury a reasonable basis on which to allocate the damage." *Id.* (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)).

Here, Defendant argues that there is no evidence to segregate between covered and non-covered losses. The Court agrees. Defendant notes that the estimates of Mike Norris do not indicate a date of loss, docket no. 42 at 16, and that Plaintiff's causation expert, Phil Mayfield, admitted he could not state what roof damage occurred on April 12, 2016, docket no. 38 at 41 (citing docket no. 38-19 at 3). Defendant argues that Mayfield "testified that a tile roof could be damaged by foot traffic or workers dropping tools on the roof" but "made no attempt to allocate covered damages from non-covered damages, instead jumping immediately to opining a full roof replacement was required because Plaintiff's original roof tiles were no longer available." Docket no. 42 at 16.

In response, Plaintiff cites Mayfield: "There is no question that the tile roofs have been subjected to damage consistent with what would be expected from hail, high winds, and/or convective storms. Damage consistent with windstorms is amply evident from one end of the structure to another." Docket no. 41 at 19-20 (citing docket no. 41-6 at 7). But Plaintiff does not point to summary judgment evidence that adequately segregates loss from the April 2016 storm from non-covered loss, nor does the Court's review of the record reveal any such evidence.

What the record shows is this: Plaintiff's house was built in 1984; an April 2016 storm caused damage that precipitated an insurance claim, which Defendant paid; another roofing contractor inspected the roof in early 2017; Defendant's expert claims a February 2017 storm caused additional damage; and Plaintiff submitted a demand in October 2017. More is needed

for any factfinder to segregate covered losses from non-covered in a case like this. On this record, the Court must agree with Defendant's argument that "Plaintiff fails to point to evidence demonstrating, with any certainty, that the April 12, 2016 storm caused Plaintiff's need for a full roof replacement." Docket no. 42 at 16.

When, as here, the insured does not meet its burden to segregate losses, Courts award summary judgement for the insurer. *See Hamilton*, 643 Fed. Appx. at 442 (affirming summary judgment where insured's evidence showed that damage could be "linked" to a particular hail storm, but did "nothing to enable a jury to segregate damages for only that property damage caused by covered perils that occurred within the policy period"); *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 304 (Tex. App.—San Antonio 1999, pet. denied) ("[T]he jury could believe that plumbing leaks caused part of the complained-of damage. However, the engineers could not indicate the extent to which this peril damaged the Wallises' home. This is fatal to their claim."). Thus, the Court grants summary judgment for Defendant on Plaintiff's breach of contract claim.

### b. Extra-contractual Claims

Next, the Court considers Defendant's motion for summary judgment on Plaintiff's other claims. In addition to the claim for breach of contract, Plaintiff brings claims for violations of the Texas Deceptive Trade Practices Act and tie-in statutes, violations of the Texas Insurance Code, and breach of the common law duty of good faith.

First, a claim under Section 542 requires the insured to show the insurer "is liable for the claim," which the Court above held that Plaintiff does not do. *Weiser–Brown Operating*

*Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015). This claim is thus dismissed.

Second, the remaining "three claims can be collectively analyzed under the same standard as a common-law bad faith claim." *Hamilton*, 643 Fed. App'x at 442 (citing *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex.App.—El Paso 2010, review denied), for the proposition that the standard for liability under § 541 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act "incorporate[s] the common-law bad faith standard"). In general, "an insured does not have a bad faith claim in the absence of a breach of contract by the insurer." *Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 941 (Tex.App.—San Antonio 1996, no writ); *see also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). "The only exceptions to this general rule are when the insurer 'commit[s] an act, so extreme, that would cause injury independent of the policy claim' or 'failed to timely investigate its insureds' claims.'" *Hamilton*, 643 Fed. App'x at 442 (quoting *Toonen*, 935 S.W.2d at 941–42.).

Here, as held above, Plaintiff's breach of contract claim fails. Further, Plaintiff presents no evidence indicating Defendant committed an extreme act that would injure Plaintiff independent of the insurance claim and there is no allegation that Defendant did not timely investigate. Thus, Plaintiff's bad faith claim fails, as do his DTPA and remaining Insurance Code claims.

**CONCLUSION**

Defendant Nationwide's motion for summary judgment (docket no. 38) is GRANTED.

Further, Defendant's motions to exclude expert testimony (docket nos. 26 and 28) are DISMISSED AS MOOT. The Clerk is DIRECTED to close this case.

It is so ORDERED.

SIGNED this 15th day of May, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE